UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AMANDA RIVIERA BRIGIDO** | **CIVIL ACTION** |
| **VERSUS** | **NO: 17-10345** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION:"I" (4)** |

## REPORT AND RECOMMENDATION

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("The Commissioner") pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied the request of Plaintiff, Amanda R. Brigido, ("Brigido"), for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423 and protectively for Supplemental Security Income Benefits ("SSI") pursuant to Title XVI, 42 U.S.C. § 423.[1]

**I.   Background**

Brigido is a forty-two-year-old, 260-pound, 5 foot 4 inches tall female who previously worked in housekeeping, as a packer, and with liquid containers. R. Doc. 8-3, Tr.101. On April 29, 2014, Brigido filed for a period of disability under Title II and SSI under Title XVI, alleging disability since March 5, 2013 for major depression disorder, agoraphobia, panic disorder, OCD, migraines, high blood pressure, and arthritis. R. Doc. 8, Tr. 19, 202, 206, 222 and 225.

---

[1] Rec. Doc. No. 1, p.1.

Brigido filed a written request for a hearing on October 23, 2014. R. Doc. 8-1, Tr. 119-121. Kerry Morgan, the Administrative Law Judge ("ALJ"), held a hearing on August 9, 2016. R. Doc. 8-4, Tr. 197. The ALJ denied Brigido's claim on September 6, 2016, finding that she was not disabled under the meaning of the Social Security Act ("SSA"). R. Doc. 8-2, Tr. 19-28.

In her decision, the ALJ reviewed Brigido's claims pursuant to the five-step[2] analysis used to determine whether a claimant is disabled. *Id*., T. 20. Using this analysis, the ALJ found that Brigido met the insured status requirements of the SSA through December 31, 2016, and that she did not engage in substantial gainful activity since January 1, 2014 (her alleged onset date). *Id.*, Tr. 22. The ALJ further found that she suffered from the following severe impairments: fibromyalgia, lumbar degenerative disc disease with radiculopathy, thoracic degenerative disc disease, chronic pain syndrome, obesity, depression, major depressive disorder without psychosis, post-traumatic stress disorder, and anxiety disorder with obsessive compulsive disorder. *Id.*

The ALJ also found that Brigido did not have an impairment, or combination thereof, that medically equaled the impairments listed in 20 C.F.R. Part. 404, Subpart P, Appendix 1, and that would constitute a presumptive disability. *Id.*, Tr. 23.

The ALJ further found the Brigido has the residual functional capacity to perform medium

---

[2] To determine whether a claimant is disabled, and thus entitled to disability benefits, a five step analysis is employed. *Carey v. Apfel*, 230 F.3d 131, 13435 (5th Cir. 2000) (citing *Crowley v. Apfel*, 197 F.3d 194 (5th Cir. 1999)). First, the claimant must not be presently working at any substantial gainful activity. *Id*. Second, the claimant must have an impairment or combination of impairments that are severe. *Id.* An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. *Id.* Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work that exists in the national economy, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.; See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

work as defined in the regulations. *Id*., Tr. 23. However, the ALJ found that she could frequently climb ramps/stairs; occasionally bend, stoop, kneel, crouch and crawl; and never climb ladders, ropes or scaffolds. *Id*. The ALJ also held that Brigido could understand, remember and complete 1, 2, 3, and 4-step simple, detailed instructions and tasks; maintain attention, concentration, persistence, or pace in two-hour segments of time (with customary breaks between segments); tolerate occasional contact with the public; and infrequent changes in job duties. Finding 5, Rec. Doc, 8-2, Tr. 26.

The ALJ further held that Brigido is capable of performing past relevant work as a hand packer and courier. Finding 6, Rec. Doc. 8-2, Tr. 26. The work, according to the ALJ, does not require the performance of work-related activities precluded by the claimant's residual functional capacity. *Id*. Finally, the ALJ found that the claimant has not been under a disability from January 1, 2014 through the decision date or September 6, 2016. Finding 7, Rec. Doc. 8-2, 27-28.

Brigido filed a complaint contending that the ALJ's decision was not based upon substantial evidence, because the ALJ: (1) impermissibly picked or chose to evaluate the evidence; (2) impermissibly relied only on her own medical opinion in determining a residual functional capacity for Brigido; (3) erred as a matter of law in deciding the case at Steps 4 and 5; (4) failed to support the residual functional a capacity evaluation and vocational evidentiary conclusions with substantial evidence; and (5) failed to properly conduct a Step 3 Listing evaluation. R. Doc. 16.

The Commissioner positions that substantial evidence supports the ALJ's finding. R. Doc. 15. The Commissioner contends that the ALJ properly evaluated Bridigo's physical impairments, and properly developed the record. *Id*. The Commissioner also contends that the ALJ's alternative

finding does not amount to legal error, because the ALJ properly relied on the vocational expert's description of Brigido's past relevant work and properly evaluated Brigido's impairments at Step Three. *Id*.

## II. Standard of Review

Under Title 42 U.S.C. § 405(g), the role of this Court on judicial review is limited to determining whether: (1) the final decision is supported by substantial evidence; and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Ripley v. Chater,* 67 F.3d, 552, 555 (5th Cir. 1995); citing *Richardson v Perales*, 402 U.S. 389, 401 (1971). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). Moreover, "a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is

overwhelmed by other evidence, particularly evidence offered by treating physicians." *Franklin v. Soc. Sec. Admin.*, No. 122681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013) (citing *Kent v. Schweiker,* 710 F.2d 110, 114 (3rd Cir. 1983)).

The ALJ must give controlling weight to the opinion of a treating physician if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (citing 20 C.F.R. § 404.1527(c)(2)). However, "[t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). The ALJ must consider the following relevant criteria: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F.R § 404.1527. "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence." *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir. 1995).

Where there is reliable medical evidence from a treating or examining physician that controverts the claimant's treating specialist, the ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under 20 CFR 404.1527. *See Newton*, 209 F.3rd 448. Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status."

*Martinez v. Chater*, 64 F.3d 173, 176 (5th Cir. 1995).

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) [the] diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [his] age, education, and work history." *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000) (*citing Martinez*, 64 F.3d at 174).

Disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a constructive period of not less than twelve months." 42 U.S.C. 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. 423(d)(3).

**III.    Analysis**

    **A.  Pick and Choose Evaluation**

Brigido alleges that the ALJ applied an impermissible "pick and choose" evaluation of the evidence because he focused on her comment that she could "run a 10K" so much that he noted it in two areas in the opinion. R. Doc. 11. Brigido contends that the ALJ ignored the context in which the statement was made (which is that she was at a mental health clinic in the middle of a manic episode and had only slept four (4) hours in the past four days). *Id*. Brigido also notes that no physical examination was part of the visit or any other visit to the clinic. *Id*.

Brigido additionally contends that, two months after the comment, she went to the clinic

6

for a visit and complained of lower back pain and pain and numbness in the lower extremities. *Id*. Moreover, upon examination, she had bilateral spasms in the lumbar spine, decreased reflexes, and decreased strength in both lower extremities. R. Doc. 11, p. 6.

The Commissioner contends that the ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole. R. Doc. 15. The Commissioner also contends that the ALJ explicitly provided that, despite her fibromyalgia and complaints of back and extremity pain, the evidence demonstrated normal musculoskeletal and neurological functioning. *Id*. Additionally, the Commissioner contends that Brigido made other statements describing limitations that were not supported by the objective medical evidence. *Id*. As a result, the ALJ's evaluation of the evidence is based upon substantial evidence and there was no pick or choosing of pieces of evidence. *Id*.

The ALJ noted that, in order to meet listing 1.04, the record must show compromise of a nerve root or the spinal cord with evidence of nerve root compressions, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. Rec. Doc. 8-2. The ALJ also noted that no physician or specialist indicated that the claimant's impairments meet or medically equal Appendix 1 of the Regulations. *Id*. The ALJ further noted that while Brigido has fibromyalgia, lumbar and thoracic degenerative disc disease with radiculopathy, and is obese, her exam was generally within normal limits, with only decreased lumbar range of motion, tenderness to palpation, lumbar spasm and decreased bilateral lower extremity strength and sensation to prick. R. Doc. 8-2, Tr. 24.

The ALJ further noted that Brigido had a normal gait and her pain symptoms, including numbness and tingling in the feet, improved with medication, moderate use of narcotic pain

medication, and facet injections. *Id*. The ALJ also noted that she did not have negative side effects from treatment and further reported that she was going to the gym five days a week. *Id*.

Moreover, the ALJ noted that Brigido had not been hospitalized for a significant period of time for her back pain, she has not seen an orthopedic surgeon or neurosurgeon to evaluate her back, and she has not had physical therapy or used a TENS unit. *Id*. The ALJ also found that Brigido does not use an assistive device to walk or wear a brace such that, considering all of the factors, the pain was not as severe as alleged. *Id*.

Listing 1.04A provides that an individual's degenerative disc disease must result in compromise of a nerve root. There must be evidence of nerve root compression evidenced by limited motion of the spine, neuro-anatomic pain distribution or motor function loss (atrophy with muscle weakness or muscle weakness) along with sensory or reflex loss. 20 C.F.R. pt. 404, subpt. P, App. 1 § 1.04(A).

The medical records show that Brigido was diagnosed with chronic pain syndrome spondylitis of lumbosacral spine, degeneration of the lumbosacral intervertebral disc, myelomalacia, and lumbar radiculopathy. R. Doc. 8-8 Tr. 502. Neurologically, Brigido had decreased reflexes and decreased range of motion. R. Doc. 8-8, Tr. 507. The records also indicate degeneration in the lower thoracic spine (more pronounced at the T10/T1) with significant left foraminal narrowing. R. Doc. 8-8, Tr. 511. The records also state that her musculoskeletal exam was normal. R. Doc. 8-7, Tr. 329, 3F.

There was no evidence of nerve root compression as evidenced by limited motion of the spine. There was also no record evidence of muscle weakness even though there was some evidence of decreased reflexes. Additionally, the ALJ further referenced other statements by

Brigido as examples of how her testimony differed from the actual evidence, thus impacting her credibility. For example, the ALJ compared Brigido's complaint of daily back pain with the fact that she reported going to the gym, and Brigido's claims of picking at her skin due to stress with the fact that no doctor found any skin lesions. The record indicates that the ALJ did not "pick and choose" evidence in her evaluation as suggested by Brigido, but instead considered all of the evidence as required. The objective evidence further shows that, while Brigido has some limitations, they were not as severe as she indicated by her testimony.

### B.  Residual Functional Capacity - Reliance on ALJ's Opinion

Brigido contends that there was no pertinent medical opinion regarding her physical limitations. R. Doc. 11. She states that the ALJ erred because she wrongly determined her RFC based solely on the claimed medical conditions without opinion of medical experts. *Id*. Brigido also contends that, despite this fact, the ALJ concluded that she had a residual functional capacity indicating an ability to stand and walk for six hours in an eight-hour day and lift and carry 25-to-50 pounds during the working day. *Id*. Brigido therefore contends that the ALJ should be reversed and remanded with instructions that an expert medical opinion should have been obtained to properly assess an RFC resulting from the many severe impairments. *Id*.

The Commissioner argues that while the ALJ did not explicitly discuss the weight afforded to Dr. Karr's opinion, she did cite to Dr. Karr's examination as evidence that her exams are generally within normal limits. R. Doc. 15. The Commissioner further argues that, even if Dr. Karr's examination was ignored, the records a whole demonstrated that her physical impairments were not as limiting as suggested by the objective findings from Doctors Sree and Bedoya. *Id*. The Commissioner also contends that the ALJ does not require a consultative examination at the

government's expense unless it was necessary to enable the ALJ to make a disability determination. *Id*.

The decision to require a consultative examination is within the discretion of the ALJ. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1993). "The ALJ's duty to undertake a full inquiry . . . 'does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision.'" *Id*. at 802 (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977_ (emphasis in original)).

The ALJ found that, while Brigido physically suffered from fibromyalgia, lumbar and thoracic degenerative disc disease with radiculopathy, and obesity, her exam was generally within normal limits, with only decreased lumbar range of motion, tenderness to palpation, lumbar spasm and decreased bilateral lower extremity strength and sensation to prick. R. Doc. 8-2, Tr. 24. The ALJ further noted that she had a normal gait and her pain symptoms, including numbness and tingling in the feet, improved with Lyrica, moderate use of narcotic pain medication, and facet injections. *Id*. The ALJ also noted one instance when Brigido could barely walk, but that it was an acute episode. *Id*.

The ALJ's RFC assessment is "based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors." SSR 96-5p, 1996 WL 374183 at *2. A condition is relevant to the ALJ's RFC determination only to the extent it limits Plaintiff's ability to work. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) ("[T]he mere existence

of [an] impairment does not reveal the extent to which [it] limit[s] [the] ability to work or undermine the ALJ's determination in that regard."). Furthermore, an ALJ is not required to seek a doctor's assessment of a claimant's RFC. Such a requirement would essentially give the medical professional "the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." 1996 WL 374183 at *2.

Here, there is no indication that the ALJ was making an uninformed decision by proceeding without a consultative examination, and it was not necessary to order one in this case. Accordingly, because the Court finds that the ALJ properly analyzed the evidence of the record as a whole, and his RFC assessment is supported by substantial evidence, the ALJ decision should be affirmed.

### C. Impact of ALJ's Alternative Finding

Brigido positions that the ALJ's decision is invalid because he reached both a Step 4 and Step 5 result. R. Doc. 11. Brigido contends that by doing so, the ALJ demonstrated prejudice. *Id*. Brigido further contends that the decision should be reversed and remanded with specific instructions to terminate the adjudication at the first step where a dispositive result is recognized. *Id*.

The Commissioner contends that a Step 4 error is harmless because of an alternative Step 5 finding. R. Doc. 15. The Commissioner further notes that Brigido cites no authority for the proposition that a later Step 5 finding is reversible error *per se*. *Id*.

In *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008), the court held that, although the ALJ's Step 4 determination constitutes error, it is harmless error in light of the ALJ's alternative finding at Step 5. As discussed below, the ALJ did not err at Step 5. Accordingly, the

ALJ's Step 4 finding constitutes harmless error.

At Step 5, the burden shifts to the Commissioner to demonstrate that the claimant can perform some work – considering the claimant's RFC, age, education, and work experience – that exists in "significant numbers" in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). The Commissioner can satisfy this burden in one of two ways: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines, or grids, where appropriate. *Id*. at 1101.

In this case, the ALJ used the Medical-Vocational guidelines, noting that Brigido's ability to perform all, or substantially all, of the requirements of the required work level was impeded by additional limitations. As a result, the ALJ asked the vocational expert if there were jobs in the national economy for a person with Brigido's age, education, work experience and residual functional capacity. The vocational expert testified that, given all the factors, Brigido would be able to perform jobs as an assembler (medium level), hand packager (medium level), and inspector (medium level). As a result of these occupations' availability in the national economy, the ALJ found that Brigido was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and therefore, was not disabled.

The ALJ properly considered the vocational expert's opinion at the Step 5 finding. Therefore, the Court finds no error in the alternative Step 5 finding such that the ALJ's decision is based upon substantial evidence.

### D.  RFC not Supported by Substantial Evidence

Brigido next contends that the ALJ's RFC finding is not supported by substantial evidence. R. Doc. 11. Brigido argues that the ALJ failed to consider evidence detracting from the weight of

12

the evidence relied upon. *Id*. Brigido appears to suggest that, because there were two vocational experts utilized, the vocational evidence is factually inaccurate and inconsistent with the DOT, and the RFC cannot be based upon substantial evidence. *Id*.

The Commissioner argues that Brigido's bare assertion that the vocational expert misidentified her past relevant work does not negate the vocational expert's testimony. R. Doc. 15. The Commissioner points out that, although Brigido made the assertion, she failed to cite to the record and provide support for her claim. *Id*. The Commissioner further contends that Brigido was represented by counsel during the administrative hearing, but the lawyer failed to object to the vocational expert's classification of her past work. *Id*. Finally, the Commissioner contends that even if the vocational expert misidentified Brigido's past relevant work, such an error would be harmless because of the alternate Step 5 finding. *Id*.

According to the record, the past relevant work performed by Brigido includes: stock clerking, housekeeping, and packing "Atlantic" and liquid containers (as listed in her application). R. Doc. 8-3, Tr. 101. Based upon the vocational expert, the ALJ concluded that Brigido could work as a hand packager, assembler and inspector. R. Doc. 27. During the hearing, Brigido testified that she worked on a production line as a packer and inspector (a medium, unskilled job). R Doc. 8-2, 27.

The record does not support Brigido's assertion that the vocational expert misidentified her past relevant work history. In fact, during the hearing, the vocational expert questioned Brigido about her work for a particular company, and in response, Brigido stated that she worked as a packager inspecting baby wipes for packages or boxes. The vocational expert's finding is based upon substantial evidence and is consistent with Brigido's testimony.

### E. ALJ Evaluation at Step Three

Brigido contends that the ALJ committed *per se* reversible error because he did not explicitly discuss a listing for her fibromyalgia and obesity. R. Doc. 11. She complains that the ALJ failed to specify any particular effects, or lack thereof, that may have been attributable to her obesity. *Id*. Brigido also appears to complain that the ALJ failed to mention Listing 14.09(D), suggesting that there was no proper evaluation of her fibromyalgia. *Id*. Moreover, according to Brigido, the alleged failure to evaluate either her obesity or fibromyalgia by the listing is reversible error. *Id*.

The Commissioner opposes, stating that even if the ALJ did not articulate why Listing 14.09 was not met in the case, the record demonstrates it was not met. R. Doc. 15. As a result, any such omission is harmless error.

Listing 14.09(A) requires persistent inflammation or deformity resulting in the inability to ambulate effectively or perform fine and gross movements effectively. 20. C.F.R. pt. 404, subpt. P, App. 1 § 14.09(A). Brigido never complained to her physicians about having any limitations to her daily living activities, much less any marked limitations. She consistently acknowledged that her medications were relieving her symptoms, without any adverse effects. R. Doc. 8, p. 287, 352, 353, 368, 378, 379, 423.

Brigido has presented no medical evidence to support qualifying for Listing 14.09(D)(1) (which requires marked limitation of activities of daily living). 20 C.F.R. p. 404, subpt. P, app. 1 § 14.09(D)(1). To the contrary, Brigido has not had problems with her personal care, used Facebook, remained in contact with her mother, cooked, and completed laundry. R. Doc. 8, Tr. 80, 82, 255. The ALJ further noted that Brigido took care of between two-to-four children, including

14

cooking and cleaning for them. Although the ALJ did not mention 14.09(D) in her analysis, she did consider the limitations to her activities of daily living and social functioning and the decision is based upon substantial evidence.

## IV. Recommendation

Accordingly,

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge denying Amanda K. Riviera Brigido Disability Insurance Benefits and Supplemental Social Security Income benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 15th day of February, 2019.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.